IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

Larry McCloud, Administrator )
of the Estate of Garry Wayne )
McCloud, )
                               )
    Plaintiff, )
                               )
    v. )   CIVIL ACTION NO. 5:07:CV:89
                               )
Melissa Hildebrand and the )
City of Hickory, North Carolina, )
                               )
    Defendant. )
                               )

## MOTION FOR RECONSIDERATION

NOW COMES the Plaintiff in this matter, through Counsel, and respectfully moves the Court for reconsideration of the Opinion filed on November 16, 2010 deciding the Motion for Summary Judgment filed by the Defendant on May 1, 2009. In the alternative, the Plaintiff respectfully prays the Court that it state in its opinion that the Order entered involves a controlling question of law as to which there is a substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation and avoid multiple trials.

1

In support of its Motion for reconsideration, the Plaintiff shows unto the Court the following:

**Qualified Immunity**

As the Court stated in its opinion, qualified immunity is an affirmative defense with the burden of proof on the defendant. Gomez v. Toledo, 446 U.S. 635, 640 (1980). Police officers are thus shielded from liability for civil damages insofar as their conduct does not violate statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 819 (1982). This presents the issues of whether the Defendant has met its burden of proof and whether a reasonable person would have known of the clearly established statutory and constitutional rights of the Plaintiff.

If there are no relevant issues of material fact, the Court should dispose of the question of qualified immunity, a question of law, at the summary judgment stage. Willingham v. Crooke, 412 F. 3d 553 (4th Cir. 2005). However, we contend that there are sufficient questions of fact for the Defendant's motion for summary judgment to be denied, since the disputed facts must be taken in the light most favorable to the Plaintiff Miltier v. Beorn, 896 F 2d. 848 (4th Cir. 1990).

2

## A. Statutory Rights

The statutory rights involved comes from North Carolina General Statutes §15A-401 (d) which allows an officer to use deadly force under certain limited circumstances. North Carolina General Statutes §15A-401(d)(2) a, justifies the Officer's use of deadly force to defend herself or a third person from what she *reasonably* believes to be the use or *imminent* use of *deadly* physical force. (emphasis added). Officer Hildebrand testified she knew the relevant statute, Hildebrand Dep. p. 124, l. 2, For deadly force to be justified under this statute, the officer must have a reasonable belief that deadly physical force was imminent. If the use of deadly force is not imminent against the Officer she has violated this statute when she uses deadly force herself.

### 1. Reasonable Belief

In this case, the deceased had gotten out of his vehicle and was unarmed as he walked toward the officer. Hildebrand Dep. p. 66, l. 17. Initially, the officer told McCloud to get down. Hildebrand Dep. p. 46. He did, but then got back up and walked toward the officer, taking a minute to a minute and a half to cover the distance estimated to be no more than 20 feet before the Officer shot him. Hildebrand Dep. p. 55, l. 8. McCloud did not try

to grab the officer's weapon, but merely tried to slap it away from him as the officer pointed the weapon at him. Hildebrand Dep. p. 96, l. 19. (The Court, in its opinion, found these facts to be in dispute which mandates against the Court's finding, and requires a denial of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).) The officer did not place McCloud under arrest. Hildebrand Dep. p. 80, l.13. Officer Hildebrand repeatedly said McCloud invited her to shoot him, Hildebrand Dep. p. 46, 47, 76, 91, 93. In her initial debriefing by SBI Special Agent Scronce, Officer Hildebrand did not say that McCloud threatened her and confirmed that the statement was accurate. Hildebrand Dep. p. 156 and 158, l, 2.

McCloud, of course, is not available to contradict the officer's testimony. Since, according to the Officer's own testimony, McCloud was not armed, did not attempt to grab the Officer's gun, did not threaten to kill her, and did not attempt to actually harm the officer, but instead invited her to shoot him, a reasonable person would not have thought there was any imminent threat of death or serious bodily harm to the Officerr or another person, and would not have fatally shot him, especially in light of the very clear parameters set by the statute.

McCloud's request to be shot, without more, is not justification for the Officer to do so. Officer Hildebrand specifically stated that she did not

4

know what McCloud's intentions were. Hildebrand Dep. p. 106, l. 10; p. 120. l. 2-3. Nowhere in her deposition did Officer Hildebrand say that McCloud was going to kill her or harm her, but that she was *afraid he might* if he got her gun (emphasis added). Hildebrand Dep. p. 47, l. 14. Fear of what he might do is purely speculative. It does not rise to the level of constituting a reasonable belief of the use of imminent deadly force, when the only deadly weapon present on the scene, her own firearm, was in her control at all times. There was no credible evidence that McCloud tried to wrest her weapon from her or was capable of doing so. With the gun firmly in her possession and control, Officer Hildebrand's speculative fear that McCloud's would use her weapon against her could not have been imminent in the absence of evidence that he was attempting to take the weapon from her. The Officer's fear without objective supporting evidence, is not sufficient to justify the use of deadly force. One of the reasons for the requirement of reasonable belief of imminent mortal danger is so that officers who are afraid or inexperienced will not end up unjustly killing people who are merely recalcitrant or obstreperous. If the Court were to condone such indiscriminate killings we contend that it would lead to the kind of autocracy that our forefathers were intent on avoiding.

There is simply no evidence from which the Court can deduce that a reasonable officer in the same circumstances would have considered that the deceased posed a threat of imminent serious physical harm to the officer. If there is any question of fact about this it is a question for a jury to determine.

2.  Use or Imminent Use

"Use " mean the person is in the act of administering deadly force, and "imminent use" means deadly force is impending or about to be used. Clearly, the facts in this case do not show that McCloud used deadly physical force. The case then turns on the meaning of imminent. The Court in Smith v. Kendall et al, a 2010 unpublished 4th Circuit opinion on an interlocutory appeal, stated, "The analysis also requires "careful attention to the facts and circumstances of each particular case, including…whether the suspect poses an immediate threat to the safety of the officers or others…" (emphasis added) citing Graham v. Connor, 490 U.S. 386.388, 395-396 1989. The term immediate is defined in Webster's Seventh New Collegiate Dictionary, p. 416, as "1. Acting or being without the intervention of another object, cause, or agency." Since McCloud was not armed there would have to have been an intervening cause for any threat he might have imposed to be deadly; to wit: wresting the gun from the officer. Thus, any threat of

6

deadly force by McCloud could not have been imminent, or as required by Garner, immediate

### 3. Deadly Physical Force

It is uncontroverted that McCloud was unarmed at the time he was shot, and there is no evidence that he was capable of using deadly force with his bare hands. The uncontroverted evidence is to the contrary. While he was no doubt recalcitrant and obstreperous, his actions could not be construed as constituting deadly force. He was not in a vehicle at the time he was shot, such as in Kendall or Waterman, posing a potential immediate threat to the Officer.

The Supreme Court in Graham v. Connor, *id*, at 396, set an objective reasonableness standard, which is justification for the use of deadly force is to be evaluated from the perspective of a reasonable officer on the scene. Gray-Hopkins v. Prince George's County, 309 F. 3d 224, 231 (4th Cir. 2002). Officer Hildebrand was frightened and inexperienced, not the reasonable officer the standard requires. This is shown by the fact that in addition to the use of excessive force in shooting the unarmed McCloud in the torso, she fired a third shot into his back, and was still covering him with her firearm a minute or two later when Officer Aaron Miller arrived on the scene. Hildebrand Dep. p. 47, 48.

7

**Constitutional Rights**

The Constitutional right involved in this case is the Fourth Amendment right against unreasonable seizure. Determining whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment requires a careful balancing of "`the nature and quality of the intrusion on the individual's Fourth Amendment interests'" against the countervailing governmental interests at stake, United States v. Place, 462 U.S. 696, 703 (1983). The Court in Tennessee v. Garner, 471 U.S. 1, 9, 105 S. Ct. 1694 (1985) stated that "the intrusiveness of a seizure by means of deadly force is unmatched." The Garner Court further held, "that there can be no question that apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment." *Id* at p. 7. The countervailing interest of the state was not the arrest of a defendant, since Hildebrand never placed McCloud under arrest, but a perceived threat to her own safety, a threat which was unreasonable since McCloud was unarmed, did not attempt to grab the gun and did not threaten or assault the officer, either by his words or his actions.

This Court, in its Memorandum and Opinion, cites <u>Saucier v. Katz</u>, 533 U.S. 194, 202 (2001) requiring the Defendant officer to show that a violation of a constitutional right was established and that it would be clear to an objectively reasonable officer that his conduct was violating that right. The proscription against unreasonable seizures has been established and therefore it remains for the defendant to show that an objectively reasonable officer would have shot McCloud under the circumstances presented. We contend that the Defendant has not met her burden of proof and therefore qualified immunity is not an available defense.

Officer Hildebrand was not an objectively reasonable officer. She was inexperienced with only two months experience on unsupervised patrol. Hildebrand Dep. p. 23, l. 17, She was still in her probationary period. Hildebrand Dep. p. 18, She called off backup and did not try to place McCloud under arrest for the misdemeanor he committed in her presence, Hildebrand Dep. p. 90, l. 13. She made no attempt to comply with the Hickory Police Department's Standing Order on the use of force continuum (an escalating use of force beginning with verbal commands, use of soft hands, hard hands, and non-lethal impact weapons before resorting to deadly force). Even though she carried on her person chemical mace and a collapsible baton, non-lethal impact weapons, Officer Hildebrand made no

9

attempt to follow the use of force continuum and the non-lethal impact weapons readily available to her. Hildebrand Dep. p. 53, l. 6. Her fear that McCloud would kill her with her own weapon *if he was able to wrest it from her* was not reasonable given the alternatives available to her. (Emphasis added)

The Court relies on the distinction made in <u>Waterman v. Batton</u>, 393 F. 3d471, 476 (4th Cir. 2005) a case easily distinguishable from the case at bar. In <u>Waterman,</u> the deceased was threatening officers by attempting to run over them with a vehicle, a deadly weapon, justifying the officers in firing five shots at him. Here McCloud was, unarmed did not strike the officer, or attempt to take her firearm, but merely pushed it away so that it was not pointed at him. He also did not threaten to harm or kill the officer but did invite her to shoot him, which is not reason for the Court to grant the officer qualified immunity when she did shoot him.

Plaintiff contends there is simply no evidence from which the Court can deduce that an objectively reasonable officer in the same circumstances would have considered that the deceased, Garry McCloud, posed a threat of imminent serious physical harm to the officer or others justifying the use of deadly force. As this Court, citing <u>Abraham v. Raso</u>, 183 F. 3d 279, 294 (3d

Cir. 1999) states in its memorandum, "[a] passing risk to a police officer is not an ongoing license to kill an otherwise unthreatening suspect."

**Necessity of Interlocutory Appeal on the issue of Qualified Immunity**

Normally, the Court of Appeals would not have jurisdiction to hear an interlocutory appeal, but the Supreme Court has said that an order rejecting qualified immunity is an appealable order at the summary judgment stage. Mitchell v. Forsyth, 472 U.S. 511, 530 (1985). When qualified immunity is denied, 28 U.S.C. 1292(b) allows an interlocutory appeal where the District Court Judge is of the opinion that an order involves a controlling question of law as to which there is a substantial difference of opinion and that an immediate appeal would advance the ultimate termination of the litigation. 28 U.S.C. 1292(b).Here the issue of qualified immunity is such a controlling question of law, which, if the District Court's Order is reversed on appeal, will necessitate the time and expense of a second trial, a trial which can be avoided if the interlocutory appeal is granted

Wherefore, the Plaintiff respectfully moves the Court for reconsideration of the decision granting Officer Melissa Hildebrand qualified immunity, and allow the jury to determine the facts as to whether the Officer was justified in killing McCloud. In the alternative, the Plaintiff

respectfully prays that the Court state in its opinion that the Order entered involves a controlling question of law as to which there is a substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, *See* 28 USC 1292.

This the 29th day of November, 2010.

>  /s/ David R. Tanis
> David R. Tanis
> Attorney for the Plaintiff
> 136 Cook Drive
> Duck NC 27949-4529
> (252) 261-8173
> davidrtanis@embarqmail.com
> NCSB No. 7357
>
> /s/ J. Griffin Morgan
> J. Griffin Morgan
> Attorney for the Plaintiff
> Elliot Pishko Morgan
> 426 Old Salem Road
> Winston-Salem, NC 27101
> Firm   (336) 724-2828
> Fax    (336) 714-4498
> *jgmorgan@epmlaw.com*
> NCSB No. 7240

# CERTIFICATE OF SERVICE

I hereby certify that on November 29, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following counsel for defendants:

**ADDRESSEES:**

William L. Hill
Frazier Hill & Fury
500 W. Friendly Ave., Suite 100
Greensboro, NC 27401
(336) 378-9411
Fax (336) 274-7358
whill@frazierlawnc.com

                                              /s/ J. Griffin Morgan
                                              J. Griffin Morgan
                                              Attorney for the Plaintiff
                                              Elliot Pishko Morgan
                                              426 Old Salem Road
                                              Winston-Salem, NC 27101
                                              Firm   (336) 724-2828
                                              Fax    (336) 714-4498
                                              *jgmorgan@epmlaw.com*
                                              NCSB No. 7240

13

Case 5:07-cv-00089-RLV-DLH   Document 45   Filed 11/29/10   Page 13 of 13